# 25-13515-JJ

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

**PHILLIP R. WASSERMAN,**

**Plaintiff-Appellant**

v.

**UNITED STATES OF AMERICA, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, AND STEPHEN HOWLAND,**

**Defendants-Appellees**

———————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

———————————

## APPELLEE BRIEF FOR THE UNITED STATES

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

JENNIFER M. RUBIN                    **(202) 307-0524**
DOUGLAS C. RENNIE                    **(202) 305-7546**
  *Attorneys, Tax Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*

-i-

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. R. 28-1(b) and Fed. R. App. P. 34(a), counsel for the United States respectfully inform this Court that they do not believe that oral argument is necessary for the resolution of this appeal, as the relevant facts and law are adequately set forth in this brief, but counsel are prepared to answer any questions that the Court may have.

## TABLE OF CONTENTS

**Page**

Statement regarding oral argument...........................................................i

Table of contents................................................................................ii

Table of citations ..............................................................................v

Statement of jurisdiction.................................................................xiv

    1.    Jurisdiction in the District Court..........................................xiv

    2.    Jurisdiction in the Court of Appeals ....................................xiv

Statement of the issues .......................................................................1

Statement of the case .........................................................................2

    (i)    Course of proceedings and disposition in the court below .....2

    (ii)    Statement of the facts ..........................................................2

        1.    IRS-CI's authority to investigate financial crimes........2

        2.    The investigation ...........................................................3

        3.    The criminal case........................................................10

        4.    The present case .........................................................12

    (iii)    Statement of the standard or scope of review......................15

**Page**

Summary of argument ......................................................................16

Argument:

The District Court correctly held that the United States is

not liable under I.R.C. § 7431 ........................................................19

    A.    Legal framework of I.R.C. §§ 6103 and 7431...............19

    B.    The alleged disclosures fell within I.R.C.

        § 6103(k)(6)'s safe harbor .............................................23

        1.    The disclosures were made respecting the

            enforcement of the Code .....................................23

        2.    The information sought by the IRS-CI agents

            was not otherwise reasonably available.............25

        3.    The disclosures were necessary to obtain

            witness cooperation ............................................27

    C.    In any event, the disclosures resulted from a good-

        faith interpretation of I.R.C. § 6103 and its

        corresponding regulations .............................................32

    D.    Wasserman's arguments to the contrary are

        unavailing...............................................................37

**Page**

1. The District Court was entitled to rely on Agent Batsch's declarations in granting summary judgment.............................................37

2. Wasserman cannot blame the United States for his own failure to conduct adequate discovery...............................................................39

3. The United States satisfied its burden of proof....................................................................41

4. Wasserman's reliance on non-precedential authority misses the mark .................................43

Conclusion....................................................................................44

Certificate of compliance ...................................................................45

## TABLE OF CITATIONS

**Cases:**                                                      **Page(s)**

*Am. Contractors Supply, LLC v. HD Supply Constr.*

Supply, Ltd.*,

989 F.3d 1224 (11th Cir. 2021)........................................15-16

*Andrews v. Marshall,*

845 F. App'x 849 (11th Cir. 2021)........................................38

*Blodgett v. Commissioner,*

394 F.3d 1030 (8th Cir. 2005)................................................42

*Bonner v. City of Prichard,*

661 F.2d 1206 (11th Cir. 1981) (en banc).............................26

*Castro v. United States,*

No. 23-10630, 2023 WL 8825316

(5th Cir. Dec. 21, 2023) .......................................................27

*Commissioner v. Heininger,*

320 U.S. 467 (1943) ..............................................................28

*Commissioner v. Tellier,*

383 U.S. 687 (1966) ..............................................................28

\* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):** **Page(s)**

*Comyns v. United States,*

155 F. Supp. 2d 1344 (S.D. Fla. 2001), *aff'd,*

287 F.3d 1034 (11th Cir. 2002)...........................22, 29, 33, 36

*Davidson v. Brady,*

732 F.2d 552 (6th Cir. 1984) .................................................41

*DiAndre v. United States,*

968 F.2d 1049 (10th Cir. 1992).............................20, 27-28, 30

*Feliciano v. City of Miami Beach,*

707 F.3d 1244 (11th Cir. 2013) ..............................................39

*Fostvedt v. IRS,*

824 F. Supp. 978 (D. Colo. 1993),

*aff'd,* 16 F.3d 416 (10th Cir. 1994).................................30, 41

*Gandy v. United States,*

234 F.3d 281 (5th Cir. 2000) ...........................................33, 36

*Geiger v. Commissioner,*

279 F. App'x 834 (11th Cir. 2008)..........................................42

*Heck v. Humphrey,*

512 U.S. 477 (1994) ...........................................................17

* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):** **Page(s)**

*Holiday Hosp. Franchising, LLC v. Oakbrook*

    *Realty & Invs., LLC,*

    817 F. App'x 694 (11th Cir. 2020)...........................................38

*Houser v. Church,*

    486 F. Supp. 3d 117 (D.D.C. 2020) .........................................2

*Kemlon Prods. & Dev. Co. v. United States,*

    638 F.2d 1315 (5th Cir.), *modified on other grounds,*

    646 F.2d 223 (5th Cir. May 1981)..........................................26

*Lowe v. Aldridge,*

    958 F.2d 1565 (11th Cir. 1992) .............................................43

*M'Culloch v. Maryland,*

    17 U.S. 316 (1819) ..............................................................28

*McDonald v. United States,*

    102 F.3d 1009 (9th Cir. 1996)................................................41

*Morgan v. United States,*

    953 F.2d 1391, 1992 WL 14934

    (10th Cir. 1992) (unpub.) ......................................................31

\* Cases or authorities chiefly relied upon have asterisks.

| Cases (cont'd): | Page(s) |
|---|---|

*Norman E. Duquette, Inc. v. Commissioner,*

110 F. Supp. 2d 16 (D.D.C. 2000) .........................................32

*Payne v. United States,*

289 F.3d 377 (5th Cir. 2002).....................................20-21, 27

*Pflum v. United States,*

No. 99-4170, 2007 WL 1651290

(D. Kan. June 6, 2007) ...........................................................43

*Rhodes v. United States,*

903 F. Supp. 819 (M.D. Pa. 1995)....................................27, 30

*Rice v. United States,*

166 F.3d 1088 (10th Cir. 1999).........................................30-31

*Rowley v. United States,*

76 F.3d 796 (6th Cir. 1996)...............................................30, 35

*Ruiz Rivera v. IRS,*

226 F. Supp. 2d 345 (D.P.R. 2002), *aff'd,*

93 F. App'x 244 (1st Cir. 2004) .........................................31-32

\* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):**                                                  **Page(s)**

*Shook v. United States,*

713 F.2d 662 (11th Cir. 1983) ............................................... 16

*Snider v. United States,*

468 F.3d 500 (8th Cir. 2006) ..................................... 27, 30, 43

*Stojetz v. Ishee,*

892 F.3d 175 (6th Cir. 2018) ............................................... 42

*Taylor v. Pekerol,*

624 F. App'x 691 (11th Cir. 2015) .................................. 22, 32

*Thompson v. Metro. Multi-List, Inc.,*

934 F.2d 1566 (11th Cir. 1991) ........................................... 38

*United States v. Eng.,*

139 F.2d 885 (5th Cir. 1944) ............................................... 42

*United States v. Stein,*

881 F.3d 853 (11th Cir. 2018) (en banc) .............................. 38

*United States v. Zak,*

481 F. Supp. 3d 1305 (N.D. Ga. 2020) ................................. 32

\* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):**                                                    **Page(s)**

*Welch v. Helvering,*

    290 U.S. 111 (1933) ...............................................................28

*Wilkerson v. United States,*

    67 F.3d 112 (5th Cir. 1995) ..................................................22

**Statutes:**

18 U.S.C.:

    § 981(a)(1)(C) .................................................................. 11, 24

    § 1341 ...........................................................................11, 24, 35

    § 1343 ...........................................................................11, 24, 35

    § 1349 .................................................................................. 11, 24

    §§ 1956-1957 ...........................................................................35

Internal Revenue Code (26 U.S.C.):

    § 6103 ..................................................1, 12, 14, 16, 19, 21-23,

                                                                    27-28, 30-32, 35-36

    § 6103(a) ........................................................................... 19, 42

    § 6103(b)(2) ......................................................................19-20

    *§ 6103(k)(6) ....... 1, 14-15, 17, 20-21, 23, 25, 27, 32, 34-35, 42

    § 7201 ..................................................................................11, 24

* Cases or authorities chiefly relied upon have asterisks.

**Statutes (cont'd):** **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 7206(1) ...................................................................... 11, 24

§ 7431 ............................................. xiv, 1-2, 19, 21-23, 32, 41

§ 7431(a) ....................................................................... 31-32

§ 7431(a)(1) ........................................................................ 21

§ 7431(b) ........................................................................... 15

*§ 7431(b)(1) .............................................. 1, 14, 17-18, 22, 32

§ 7608(b) ............................................................................. 3

28 U.S.C.:

§ 1291 ............................................................................... xiv

§ 1331 ............................................................................... xiv

§ 2461(c) ....................................................................... 11, 24

\* Cases or authorities chiefly relied upon have asterisks.

**Regulations and Regulatory Materials:**          **Page(s)**

Treasury Regulations (26 C.F.R.):

§ 301.6103(k)(6)-1(a)(1)(iv) .............................................. 23, 34

§ 301.6103(k)(6)-1(a)(3) ....................................................... 29

*§ 301.6103(k)(6)-1(c)(1) ...................................... 21, 27-29, 34

*§ 301.6103(k)(6)-1(c)(3) .............................................. 21, 26, 34

*§ 301.6103(k)(6)-1(d) .......................................... 18, 29, 34-35

*Disclosure of Return Information by Certain Officers and*

*Employees for Investigative Purposes*, 71 Fed.

Reg. 38985 (July 11, 2006) ....................................................... 36

Internal Revenue Manual ("IRM"):

9.1.2.2, 2018 WL 7775093 ................................................. 2, 35

9.1.3-1, 2018 WL 7775334 ................................................. 3, 25

9.1.3-2, 2018 WL 7775336 ........................................... 3, 25, 35

9.4.5.11.3.1.4(1), 2018 WL 7776501 ....................................... 6

9.4.5.6, 2018 WL 7776427 ....................................................... 6

\* Cases or authorities chiefly relied upon have asterisks.

**Rules:**

11th Circuit Rules:

28-1(b) ..................................................................................i

Federal Rules of Appellate Procedure:

4(a)(1)(B) ...........................................................................xiv

34(a) ....................................................................................i

Federal Rules of Civil Procedure:

30(a)(1) ..............................................................................41

45 .......................................................................................41

56 .......................................................................................38

56(a) ...................................................................................16

56(c)(1)(A) ..........................................................................37

56(c)(4) ...............................................................................38

* Cases or authorities chiefly relied upon have asterisks.

-xiv-

## STATEMENT OF JURISDICTION

### 1.    Jurisdiction in the District Court

Phillip R. Wasserman brought this case asserting claims for the allegedly unauthorized disclosure of confidential return information against the United States, the State of Florida, and Stephen Howland. (Doc. 1.)[1]  The District Court had jurisdiction under Internal Revenue Code ("I.R.C." or "Code") § 7431 (26 U.S.C.) and 28 U.S.C. § 1331.

### 2.    Jurisdiction in the Court of Appeals

On September 10, 2025, the District Court issued a final judgment in favor of the defendants, resolving all claims of all parties.  (Doc. 128.) Wasserman timely filed a notice of appeal on October 6, 2025.  (Doc. 132); Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] "Doc." refers to documents in the record of the District Court, as numbered by the Clerk of the District Court.

-1-

## STATEMENT OF THE ISSUES

Wasserman asserts that IRS criminal investigation agents (as well as an investigator for the State of Florida) violated I.R.C. § 6103 by allegedly disclosing return information to potential witnesses during the course of an investigation.  The District Court granted summary judgment to the defendants on Wasserman's claims for damages for the alleged disclosures pursuant to I.R.C. § 7431.  As to the United States, this appeal raises the following issues:

1.      Whether the District Court correctly granted summary judgment to the United States on Wasserman's claims based on the court's conclusion that the disclosures were authorized by I.R.C. § 6103(k)(6)'s safe harbor for IRS agents conducting investigations to enforce the tax laws.

2.      In the alternative, whether the District Court correctly granted summary judgment to the United States on Wasserman's damages claims based on the court's conclusion that, even if the IRS agents made unauthorized disclosures, they nonetheless satisfied the good-faith exception pursuant to I.R.C. § 7431(b)(1) as a matter of law.

-2-

## STATEMENT OF THE CASE

### (i)     Course of proceedings and disposition in the court below

After he was indicted for various tax and related financial crimes, Wasserman brought this suit seeking damages for allegedly unauthorized disclosures under I.R.C. § 7431.  The case was stayed during his criminal case.  After it resumed, the parties completed discovery and cross-moved for summary judgment.  The District Court granted the defendants' motions and denied Wasserman's motions. Wasserman now appeals.

### (ii)    Statement of the facts

#### 1.     IRS-CI's authority to investigate financial crimes

Special agents in the IRS Criminal Investigation Division ("IRS-CI") investigate potential criminal violations of the Internal Revenue Code and related financial crimes.  *E.g.*, *Houser v. Church*, 486 F. Supp. 3d 117, 125 (D.D.C. 2020); (*see also* Doc. 117-1 at 2-3 ¶2.)  They are guided in their work by the Special Agents' Handbook.  *See* Internal Revenue Manual ("IRM") Part 9.  Special agents are authorized to investigate and enforce the criminal provisions of the internal revenue laws and related statutes.  *See* IRM 9.1.2.2, 2018 WL 7775093 (citing,

-3-

*inter alia*, I.R.C. § 7608(b)).  There are dozens of non-tax money laundering, fraud, and bribery crimes that fall within IRS-CI's investigatory authority.  *See* IRM 9.1.3-1, 2018 WL 7775334 (Statutes within the Jurisdiction of Criminal Investigation); IRM 9.1.3-2, 2018 WL 7775336 (Statutes Applicable When Charged in Conjunction with a Tax or Money Laundering Violation over which CI Has Jurisdiction).

### 2.    The investigation

In 2018, the State of Florida's Office of Financial Regulation ("OFR") began an investigation into Wasserman and his insurance company, FastLife, after receiving a complaint from State of Alabama officials.  (Doc. 77-2 at 2 ¶5; Doc. 81-2 at 30-31.)  A Florida consumer also submitted a complaint about Wasserman.  (Doc. 77-2 at 3 ¶12.)

Wasserman is a former attorney with a background in the insurance industry.  (Doc. 21 at 7 ¶¶18-20.)  He founded FastLife as an "insurance business" in 2016.  (*Id.* at 8 ¶29.)  The company had "significant" start-up costs, which led Wasserman to seek funding from "individual lenders and investors."  (*Id.* at 8-9 ¶¶32-33.)  Wasserman and FastLife CFO Kenneth Rossman solicited investments from many clients, some of whom loaned money to the company through

-4-

promissory notes and some of whom obtained equity stakes. (*Id.* at 10 ¶¶34, 36-37.) But Wasserman also acknowledged that he had "financial problems" that resulted in tax liens being filed against him. (*Id.* at 8 ¶27.) As OFR Investigator Stephen Howland subsequently learned, many of the investors were senior citizens with no prior relationship with Wasserman or Rossman. (Doc. 77-2 at 2-3 ¶¶11, 15.)

Investigator Howland discussed the investigation with Shawn Batsch, a special agent with IRS-CI. (Doc. 81-3 at 25-26; Doc. 81-4 at 2 ¶1.) IRS-CI joined the investigation in 2019, with Agent Batsch taking the lead. (Doc. 81-2 at 170; Doc. 81-4 at 3 ¶4; Doc. 77 at 4 ¶22.) He did so in his capacity as an IRS-CI special agent and a member of the FBI's Joint Financial Crimes Task Force. (Doc. 117-1 at 3 ¶3.) The investigation focused on whether Wasserman defrauded investors in FastLife and committed various tax crimes. (Doc. 81-4 at 3 ¶4.) Those potential crimes included tax evasion, filing false tax returns, securities fraud, mail fraud, wire fraud, and money laundering. (Doc. 117-1 at 3 ¶4.) The non-tax and tax violations were part of a single investigation. (Doc. 117-1 at 3 ¶4; Doc. 77-2 at 5 ¶¶28-29.) In white collar fraud cases,

-5-

the same evidence is used to prove mail fraud, wire fraud, and criminal tax violations.  (Doc. 117-1 at 3 ¶4.)

IRS-CI agents sought to determine whether Wasserman failed to report as income the funds he solicited from investors and used for himself, thereby committing tax evasion.  (Doc. 117-1 at 3-4 ¶5.)  They also sought to determine whether Wasserman violated money laundering statutes by commingling investor funds with his personal funds in FastLife's account and to determine how the funds were used. (*Id.*)  To prove money laundering, the funds must originate from a specified unlawful activity, such as mail or wire fraud.  (*Id.*)  Thus, those charges are crucial to substantiating money laundering charges. (*Id.*)

Individuals committing fraud rarely report the fraudulent proceeds as taxable income.  (Doc. 117-1 at 5 ¶9.)  To determine the scope of the fraud and extent of undeclared income, agents needed to determine whether the investors would have made their investments if they had known about Wasserman's prior tax debts and judgments. (*Id.*)  They needed to find out whether the payments were business investments or were made as gifts or otherwise intended for

-6-

Wasserman's personal use. (*Id.*) What Wasserman had told (or failed to tell) the investors would also be relevant to determining whether he committed securities fraud, mail fraud, wire fraud, money laundering, and tax evasion. (*Id.* at 4-5 ¶¶6, 9; Doc. 81-4 at 4 ¶8.)

Agent Batsch determined that he could not obtain unbiased and credible information about those representations from any source other than the individuals Wasserman solicited. (Doc. 81-4 at 4 ¶8.) He thus determined that it was necessary to interview those individuals. (Doc. 81-4 at 4 ¶7.)

Agent Batsch and his colleagues interviewed over 50 witnesses. (Doc. 81-4 at 6-7 ¶11.) In these interviews, the agents showed their credentials and identified themselves as special agents with IRS-CI, consistent with their training, IRS guidance, and their experience. (*Id.* at 4-5 ¶9 (citing IRM 9.4.5.11.3.1.4(1), 2018 WL 7776501).) For similar reasons, they informed witnesses that the interviews related to Wasserman and FastLife because that context was necessary to secure their cooperation. (*Id.* at 5 ¶10 (citing IRM 9.4.5.11.3.1.4(1), 2018 WL 7776501, and IRM 9.4.5.6, 2018 WL 7776427).) Based on Agent Batsch's experience, it is virtually impossible to gather information

-7-

from any source without first identifying himself as a special agent with

IRS-CI.  (*Id.* at 4-5 ¶9.)  Thus, as shown by interview transcripts

attached to Wasserman's complaint, agents would introduce themselves

as "Special Agent [Name], criminal investigation.  This is an ongoing

investigation into Phillip Wasserman."  (Doc. 1-1 at 4.)

To determine whether Wasserman made material

misrepresentations or omissions to prospective investors, Agent Batsch

obtained copies of notices of federal tax liens and civil judgments filed

against Wasserman from court.  (Doc. 81-4 at 6 ¶12.)  He also obtained

a copy of his compensation agreement with FastLife from OFR.  (*Id.*)

After obtaining that information, the agents asked witnesses

questions seeking to determine whether they made fully informed

decisions to invest in FastLife or were deceived into doing so.  (Doc. 81-4

at 6-8 ¶¶12-14.)  They needed to determine whether those individuals

knew what they were investing in and if they were defrauded.  (Doc.

117-1 at 4 ¶7.)  They also inquired about Wasserman's compensation

agreement, which they suspected was fictitiously created to divert

OFR's investigation.  (Doc. 81-4 at 8 ¶15.)  They also sought to learn

about the extent of the debts Wasserman was accruing in FastLife's name.  (*Id.* at 8-9 ¶16.)

Specifically, the agents asked:

1. If the witnesses had been told that Wasserman had federal tax liens recorded against him, would that have impacted their decision to invest in FastLife?  (Doc. 81-4 at 6 ¶13(a).)

2. If they had been told that Wasserman had civil judgments against him and his company, would that have impacted their decision to invest in FastLife?  (*Id.* at 7 ¶13(b).)

3. Had the witness ever seen a compensation or employment agreement between Wasserman and FastLife?  (*Id.* ¶13(c).)

4. If they had been told Wasserman had unpaid federal taxes, would that have impacted their decision to invest in FastLife?  (*Id.* ¶13(d).)

5. If they had been told that Wasserman owed money to other investors, would that have impacted their decision to invest in FastLife?  (*Id.* ¶13(e).)

6. If they had been told the details of Wasserman's personal expenses that were paid from the FastLife business account,

would that have impacted their decision to invest in FastLife?  (*Id.* ¶13(f).)

7.  If they had been told that Wasserman commingled business and personal funds, would that have impacted their decision to invest in FastLife?  (*Id.* ¶13(g).)

8.  If they had been told that there was no contemporaneous bookkeeping or tracking of their investment funds in the business account, would that have impacted their decision to invest in FastLife?  (*Id.* at 8 ¶13(h).)

9.  If they had been told that FastLife's CFO lacked access to or signature authority over the business bank account, would that have impacted their decision to invest in FastLife?  (*Id.* ¶13(i).)

The answers to the questions directly contributed to the determination of whether to recommend mail fraud, wire fraud, and tax evasion charges.  (Doc. 117-1 at 7 ¶12.)  For example, asking investors whether they would have invested if they had known about Wasserman's tax liens would yield information about whether they were fraudulently induced to invest, whether they knowingly invested

at all, and whether Wasserman failed to report the proceeds. (*Id.* ¶13.) Some witnesses believed they were purchasing an annuity or life insurance policy from an insurance company and did not know that they had invested in FastLife. (*Id.* at 7-8 ¶13.) And the answers to those questions led the agents to ask more detailed follow-up questions to explore the scale of Wasserman's tax evasion. (*Id.* at 8 ¶15.)

The witnesses were the only credible source for this information. (Doc. 81-4 at 4, 9 ¶¶8, 17.) All information that the agents shared with the witnesses was reasonably tailored and necessary to elicit accurate, complete, and useful information. (*Id.*) The questions were similar to those asked of the witnesses at Wasserman's 2023 criminal trial, discussed below. (*Id.* ¶17.)

The agents did not disclose information from Wasserman's or FastLife's tax returns with the witnesses. (Doc. 81-4 at 9 ¶18.) Any information about Wasserman's tax liabilities came from the publicly available tax liens recorded against him. (Doc. 81-3 at 191-92.)

### 3.    The criminal case

In 2020, Wasserman was indicted along with Rossman. Indictment, *United States v. Wasserman*, No. 8:20-cr-207, ECF No. 1

(M.D. Fla. June 23, 2020).  Charges eventually included conspiracy to commit wire fraud and mail fraud (18 U.S.C. § 1349), 5 counts of wire fraud (18 U.S.C. § 1343), 3 counts of mail fraud (18 U.S.C. § 1341), and multiple tax crimes, including tax evasion (I.R.C. § 7201) and 7 counts of making false statements on tax returns (I.R.C. § 7206(1)).  Superseding Indictment, *United States v. Wasserman*, No. 8:20-cr-207, ECF No. 69 (M.D. Fla. Nov. 18, 2020).  The Government also sought forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  *Id.* at 27-28.

A jury found Wasserman guilty of 9 counts of wire fraud, mail fraud, and conspiracy to commit wire fraud and mail fraud, and he pled guilty to one count of tax evasion.  (Doc. 77-1.)  In his plea agreement, Wasserman acknowledged multiple acts of evasion to prevent the IRS from collecting outstanding tax assessments as indicated on notices of federal tax lien.  Plea Agreement at 11, *United States v. Wasserman*, No. 8:20-cr-207, ECF No. 992 (M.D. Fla. Oct. 20, 2023).  He was sentenced to 180 months imprisonment and restitution of nearly $6.9 million.  (Doc. 77-1.)  His appeal is currently pending.  *United States v. Wasserman*, No. 24-10389 (11th Cir.)

-12-

### 4.    The present case

In 2021, Wasserman filed the present action.  (Doc. 1; *see also* Doc. 21 (amended complaint).)  Characterizing himself as an "innocent citizen," he asserted claims against the United States, OFR, and Investigator Howland for alleged unauthorized disclosures in violation of I.R.C. § 6103.  (Doc. 21 at 1-2.)  Wasserman's claims all relate to alleged disclosures made during interviews conducted by the IRS special agents and Investigator Howland.  (*Id.* at 20-148.)  Specifically, Wasserman alleged that the IRS agents[2] disclosed:

- That there was a criminal investigation of Wasserman (Count 1) or that he was under investigation (Count 32);

- That Wasserman had trouble paying bills (Count 3), prioritized paying others (Count 5), and paid various other expenses (Counts 34, 38);

---

[2] Counts 24-31, 43-45 were asserted against OFR and Howland only.  Several other counts appear to relate to FastLife rather than Wasserman—namely, alleging disclosures that FastLife was under investigation (Count 14), that FastLife's accounting and bookkeeping was delayed (Counts 56-60), and that Rossman did not have access to FastLife's bank accounts or signatory authority (Counts 61-65).

- Wasserman's salary (Count 2), his employment agreement (Count 4), or his compensation agreement (Counts 33, 37, 46-50, 66, 69-70);

- That Wasserman had federal tax liens filed against him (Counts 6-7, 10, 12, 15, 17, 20-21, 35, 39-40, 68);

- That Wasserman had civil judgments against him (Counts 8-9, 11, 13, 16, 22-23, 36, 41-42, 67);

- That Wasserman had a federal tax debt exceeding $1 million (Count 18);

- That Wasserman owed money to other investors (Count 19); and

- That FastLife's bank account was commingled with Wasserman's personal expenses (Counts 51-55).

The present case was initially stayed during the pendency of Wasserman's criminal case (Doc. 20) and reopened after his conviction (Doc. 30). The case proceeded to discovery. (*See* Doc. 55.) The parties jointly sought and obtained an extension of the dispositive-motion deadline to allow depositions to be completed. (Doc. 68; Doc. 69.)

-14-

Wasserman then deposed Agent Batsch and Investigator Howland. (Doc. 81-2; Doc. 81-3.)

After the close of discovery, the parties cross-moved for summary judgment. (Doc. 77; Doc. 78; Doc. 81.) The United States argued that any disclosures were based on information obtained from public sources, were authorized by I.R.C. § 6103(k)(6) because they were made for investigative purposes, and/or were based on a "good faith" interpretation of the law, *see* I.R.C. § 7431(b)(1). (Doc. 81.) OFR and Howland also moved for summary judgment on various grounds. (Doc. 77.)

For his part, Wasserman argued that the interview questions violated Section 6103, that there was no "public record" exception, and that the "good faith" defense did not apply. (Doc. 78.) Wasserman further asserted that the investigation did not involve his tax liability, the information was "not relevant nor necessary" to the investigation, and the agents should have questioned Wasserman before interviewing his clients. (Doc. 94.)

The District Court (Judge Tom Barber) granted the defendants' motions and denied Wasserman's motion. (Doc. 127.) The court held

that the IRS agents' disclosures were authorized by Section 6103(k)(6) and that the statute did not require the agents to conduct their investigation in a particular way (such as by interviewing Wasserman rather than his victims). (*Id.* at 8-9.) It explained that "these witnesses were obviously the best if not only sources of information on what they were told or not told by Wasserman and what they relied on when they invested with him." (*Id.* at 9.) It further found that the disclosures were related to tax violations, as demonstrated by the fact that Wasserman was indicted for and convicted of both tax violations and other financial crimes. (*Id.* at 9-10.) And "[e]ven if this reading of the statute were deemed to be incorrect," IRS guidance supported it and consequently, the agents' conduct was covered by the "good faith" exception under Section 7431(b). (*Id.* at 10-14.) Similarly, the court granted the motion by OFR and Howland, dismissing those claims, and denied Wasserman's motion. (*Id.* at 14-19.)

### (iii)  Statement of the standard or scope of review

This Court "review[s] *de novo* a grant of summary judgment." *Am. Contractors Supply, LLC v. HD Supply Constr. Supply, Ltd.*, 989 F.3d 1224, 1232 (11th Cir. 2021) (citation omitted). "Summary judgment is

appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).  Notably, "[c]ross motions for summary judgment may be probative of the nonexistence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).  In addition, the "Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Am. Contractors*, 989 F.3d at 1232 (citation omitted).

## SUMMARY OF ARGUMENT

A jury convicted Phillip R. Wasserman of numerous financial crimes, and he subsequently pleaded guilty to tax evasion.  The convictions stemmed from his efforts to solicit investments for his purported insurance business, FastLife.  After he was indicted, Wasserman brought this action to challenge the investigation against him.  Specifically, his claims against the United States were based on alleged disclosures of tax "return information" by IRS-CI special agents when interviewing his investors in alleged violation of I.R.C. § 6103.  Wasserman's opening brief on appeal (e.g., Br. 18, 27, 29) demonstrates

-17-

that the true purpose of this suit is to attack his convictions—which is problematic, even if not formally barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Regardless, as the District Court correctly recognized, the disclosures were authorized by the safe harbor for agents conducting investigations, I.R.C. § 6103(k)(6), or, in the alternative, the provision permitting disclosures made by agents acting in "good faith" reliance on IRS guidance, I.R.C. § 7431(b)(1).

1.     The "investigative" safe harbor, I.R.C. § 6103(k)(6), was enacted to cover these circumstances.  The record shows that all three factors for the safe harbor were satisfied here.  First, the disclosures were made to enforce the tax code and investigate activity proscribed by the tax laws.  The investigation led to numerous charges against Wasserman, including one count of tax evasion and 7 counts of making false statements on tax returns.  Moreover, IRS-CI agents are authorized to investigate the other types of financial charges at issue.  Second, the information sought by the investigation was not "otherwise reasonably available," I.R.C. § 6103(k)(6), because the witnesses were the only source of unbiased and credible information about Wasserman's representations to them.  Third, the disclosures were

-18-

necessary to obtain witness cooperation.  "Necessary" for these purposes simply means "helpful" or "appropriate."  And providing context—such as an agent identifying both himself and the person being investigated—is critical to gaining witness cooperation, as witnesses may otherwise fear that they are the targets of the investigation.

2.    Even if the safe harbor did not apply, the "good faith" exception, I.R.C. § 7431(b)(1), permitted the disclosures here.  Treasury Regulations, which are explicitly contemplated by the statute, and the Internal Revenue Manual provide numerous examples authorizing disclosures in nearly identical circumstances.  *See, e.g.*, Treas. Reg. (26 C.F.R.) § 301.6103(k)(6)-1(d) (example 3).  Any agent reviewing this guidance would conclude that the disclosures would be permitted here.  And that guidance was entirely reasonable.  Indeed, even before some of that guidance was issued, courts had approved similar disclosures.

3.    Wasserman's arguments to the contrary are irrelevant or unpersuasive.  The District Court was entitled to rely on the IRS-CI agent's declarations even if they were "self-serving."  Wasserman conducted discovery and deposed the agent.  To the extent that he failed to determine the United States's positions in the case prior to summary

judgment, he has no one to blame but himself.  Moreover, the United States satisfied any burden of proof that it bore—nothing required it or the District Court to address's Wasserman's claims on a disclosure-by-disclosure basis.  Wasserman cites one case that he asserts supports his arguments in part, but it is not controlling here and has long been superseded by regulation.  This Court should affirm.

## ARGUMENT

**The District Court correctly held that the United States is not liable under I.R.C. § 7431**

### A.    Legal framework of I.R.C. §§ 6103 and 7431

This case involves the intersection of Sections 6103 and 7431 of the Code.  Section 6103(a) states that taxpayer "[r]eturns and return information shall be confidential," and prohibits government employees, including IRS employees, from disclosing such information to third parties unless an express exception applies.  I.R.C. § 6103(a).  Section 6103(b)(2) defines "return information" broadly, encompassing, *inter alia*, "a taxpayer's identity," "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing," and the "amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax

-20-

liability, tax withheld, deficiencies, overassessments, or tax payments."
I.R.C. § 6103(b)(2).

As relevant here, Section 6103(k)(6) provides an exception to the general prohibition of disclosure of return information, "creat[ing] a safe harbor for IRS agents carrying out certain investigative duties." *Payne v. United States*, 289 F.3d 377, 381 (5th Cir. 2002). This safe harbor allows IRS agents who are conducting "any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws" to "disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, . . . with respect to the enforcement of any [provision of the Code]." I.R.C. § 6103(k)(6). The statute further indicates that such disclosures shall be made "in such situations and under such conditions as the Secretary may prescribe by regulation." *Id.*

Thus, an IRS agent may disclose return information as part of a tax investigation if the disclosure satisfies three requirements. *Payne*, 289 F.3d at 382 (quoting *DiAndre v. United States*, 968 F.2d 1049, 1052 (10th Cir. 1992)). First, the agent must be seeking information "with

-21-

respect to the correct determination of tax, liability for tax, or the

amount to be collected or with respect to the enforcement of any other

provision of the Internal Revenue Code." *Id.* (brackets omitted).

Second, the information must "not [be] otherwise reasonably available."

*Id.* Third, it must be "necessary to make disclosures of return

information in order to obtain the additional information sought." *Id.*

Whether a disclosure is authorized under Section 6103(k)(6) depends on

the "facts and circumstances" of the case. Treas. Reg. § 301.6103(k)(6)-

1(c)(1) & (3); *see also Payne*, 289 F.3d at 382.

Section 7431 establishes a cause of action for damages against the

United States based on the unauthorized disclosure of return

information in violation of Section 6103. It states:

> If any officer or employee of the United States knowingly, or
> by reason of negligence, inspects or discloses any return or
> return information with respect to a taxpayer in violation of
> any provision of section 6103, such taxpayer may bring a
> civil action for damages against the United States in a
> district court of the United States.

I.R.C. § 7431(a)(1). Liability under Section 7431 "requires (1) that the

IRS disclosed confidential tax return information either knowingly or

negligently, and (2) that this disclosure was not authorized by § 6103 of

the Internal Revenue Code." *Wilkerson v. United States*, 67 F.3d 112, 115 (5th Cir. 1995).

But no liability arises with respect to any disclosure that "results from a good faith, but erroneous, interpretation of section 6103." I.R.C. § 7431(b)(1). The "good faith exception applies, and thus bars a plaintiff from recovering damages under Section 7431, where 1) the agent or agents who disclosed tax return information in violation of Section 6103 followed the relevant agency regulations and/or manuals, and 2) the regulations and/or manuals followed by those agents constituted a reasonable interpretation of the law." *Taylor v. Pekerol*, 624 F. App'x 691, 695 (11th Cir. 2015) (quoting *Comyns v. United States*, 155 F. Supp. 2d 1344, 1350 (S.D. Fla. 2001), *aff'd,* 287 F.3d 1034 (11th Cir. 2002))[3] (emphasis omitted). This is an "objective standard." *Id.* (citing *Comyns*, 155 F. Supp. 2d at 1350).

---

[3] In *Comyns*, 287 F.3d at 1034, this Court recognized that its opinion established circuit precedent but stated that a "full-blown opinion" was unnecessary in light of the district court's reported opinion.

-23-

## B. The alleged disclosures fell within I.R.C. § 6103(k)(6)'s safe harbor

Assuming for the purposes of summary judgment that the alleged disclosures included Wasserman's "return information" under Section 6103, they were investigative disclosures authorized by Section 6103(k)(6), precluding any damages under Section 7431.  As discussed below, the three-part statutory test was satisfied and the District Court correctly held that the disclosures were permitted.  (Doc. 127 at 7-10.) If this Court agrees, it need not decide whether the "good faith" exception (*see* Point C, *infra*) applies.

### 1. The disclosures were made respecting the enforcement of the Code

Section 6103(k)(6)'s safe harbor applies to disclosures made by IRS-CI special agents in connection with criminal tax investigations "with respect to the enforcement of any other provision of this title." Moreover, those individuals may make disclosures to "[e]stablish[ ] or verify[ ] misconduct (or possible misconduct) or other activity proscribed by the internal revenue laws or related statutes."  Treas. Reg. § 301.6103(k)(6)-1(a)(1)(iv).  That standard was satisfied here.

The disclosures at issue were made in connection with an investigation led by IRS-CI into Wasserman that resulted in multiple tax charges, as well as charges for related financial crimes that IRS-CI has authority to investigate. Agent Batsch explained that the tax and non-tax violations were all part of the same investigation. (Doc. 117-1 at 3 ¶4; Doc. 77-2 at 5 ¶¶28-29.) The same evidence is used to prove both categories of charges. (Doc. 117-1 at 3 ¶4.) And Wasserman's disclosures to prospective investors were relevant to establishing both tax and non-tax violations. (*Id.* at 4-5 ¶¶6, 9; Doc. 81-4 at 4 ¶8.) As the District Court properly recognized, "an individual's participation in a fraudulent scheme will often implicate or lead to evidence of tax violations, and vice versa." (Doc. 127 at 10.)

The investigation resulted in 8 criminal charges under the Code against Wasserman, including tax evasion (I.R.C. § 7201) and 7 counts of making false statements on tax returns (I.R.C. § 7206(1)). The other charges included conspiracy to commit wire fraud and mail fraud (18 U.S.C. § 1349), wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and forfeiture (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)). Superseding Indictment, *United States v. Wasserman*, No.

-25-

8:20-cr-207, ECF No. 69 (M.D. Fla. Nov. 18, 2020).  IRS special agents are authorized to pursue all of those charges.  *See* IRM 9.1.3-1, 2018 WL 7775334; IRM 9.1.3-2, 2018 WL 7775336.

Indeed, the investigation was a success—as even Wasserman acknowledged.  As a result of it, Wasserman *pleaded guilty to tax evasion*.  (Doc. 77-1.)  He told the court that he "personally researched those elements ad nauseum" and agreed that the evidence uncovered by the investigation established them.  *See* Change of Plea Hearing Transcript at 13-14, *United States v. Wasserman*, No. 8:20-cr-207, ECF No. 1053 (M.D. Fla. Oct. 23, 2023).

The disclosures were accordingly made "with respect to" enforcement of the Code and the first factor was satisfied.

### 2.    The information sought by the IRS-CI agents was not otherwise reasonably available

The second safe harbor requirement is that the information sought must be "not otherwise reasonably available."  I.R.C. § 6103(k)(6).  "Information not otherwise reasonably available" means information that the agent "reasonably believes . . . cannot be obtained in a sufficiently accurate or probative form, or in a timely manner, and without impairing the proper performance of [his] official duties."

Treas. Reg. § 301.6103(k)(6)-1(c)(3).  This factor "does not require or

create the presumption or expectation that an internal revenue . . .

employee must seek information from a taxpayer" before "contacting a

third party witness in an investigation."  *Id.*  Indeed, an IRS agent may

even make a disclosure to a third party "to corroborate information

provided by a taxpayer."  *Id.*

Agent Batsch reasonably determined that the agents could not

obtain "unbiased and credible information about the representations

Wasserman made to prospective investors in FastLife from any source

except the individuals he solicited."  (Doc. 81-4 at 4 ¶8.)  This Court's

predecessor accepted similar evidence.  *Kemlon Prods. & Dev. Co. v.*

*United States*, 638 F.2d 1315, 1323 (5th Cir.) (agent's sworn statement

that direct contact with customers was necessary to ensure candid

responses established likelihood of prevailing), *modified on other*

*grounds,* 646 F.2d 223 (5th Cir. May 1981).[4]  As the District Court

explained, "these witnesses were obviously the best if not only source of

information on what they were told or not told by Wasserman and what

---

[4] Fifth Circuit decisions entered prior to October 1981 are binding
precedent in this Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206,
1209 (11th Cir. 1981) (en banc).

they relied on when they invested with him." (Doc. 127 at 9.) That conclusion was obviously correct given the importance of Wasserman's disclosures to the potential charges at issue. (Doc. 81-4 at 7-8 ¶¶14-17; Doc. 117-1 at 7-8 ¶¶11-15.) The availability factor was accordingly satisfied.

### 3. The disclosures were necessary to obtain witness cooperation

The third safe harbor requirement is that the disclosures must be "necessary . . . in order to obtain the additional information sought." *DiAndre*, 968 F.2d at 1052 (citing I.R.C. § 6103(k)(6)). "[N]ecessary" in this context means "appropriate and helpful." *Castro v. United States*, No. 23-10630, 2023 WL 8825316, at *1 (5th Cir. Dec. 21, 2023) (quoting Treas. Reg. § 301.6103(k)(6)-1(c)(1)); *accord Payne*, 289 F.3d at 389 (Garza, J., concurring in part and dissenting in part) ("'Necessary' in § 6103 must mean . . . 'appropriate or helpful'—not 'strictly essential.' In legal contexts, we rarely use 'necessary' in the latter sense."); *Snider v. United States*, 468 F.3d 500, 513-14 (8th Cir. 2006) (Gruender, J., concurring in part and dissenting in part) (agreeing with Judge Garza); *Rhodes v. United States*, 903 F. Supp. 819, 824 (M.D. Pa. 1995). This is the common reading of "necessary" for tax statutes. *See, e.g.*,

*Commissioner v. Tellier*, 383 U.S. 687, 689 (1966) ("necessary" in Code section permitting deductions imposed "only the minimal requirement that the expense be 'appropriate and helpful'"); *Commissioner v. Heininger,* 320 U.S. 467, 471 (1943) (similar); *Welch v. Helvering*, 290 U.S. 111, 113 (1933) ("necessary" meant "appropriate and helpful") (citing *M'Culloch v. Maryland*, 17 U.S. 316, 413 (1819)).

Moreover, the necessity factor does not "refer to the necessity of conducting an investigation or the appropriateness of the means or methods chosen to conduct the investigation." Treas. Reg. § 301.6103(k)(6)-1(c)(1). "The section does not require the IRS to justify the appropriateness or need for the information sought so long as such information relates to the determination of tax liability and is not otherwise reasonably available." *DiAndre*, 968 F.2d at 1053. "In other words, section 6103 does not provide a vehicle to test the probable cause or any other level of justification to investigate." *Id.*

The necessity factor was satisfied here. As Agent Batsch explained, "it would be virtually impossible for me to gather information from any source without first identifying myself as special agent with IRS-CI." (Doc. 81-4 at 5 ¶9.) He further explained that the

-29-

agents "informed witnesses that their interviews were related to an investigation of Wasserman and FastLife because we believed it necessary to provide that context for our questions to secure their cooperation."  (*Id.* ¶10.)

Agents "may identify themselves, their organizational affiliation (*e.g.*, Internal Revenue Service (IRS), Criminal Investigation (CI) or TIGTA, Office of Investigations (OI)), and the nature of their investigation, when making an oral, written, or electronic contact with a third party witness."  Treas. Reg. § 301.6103(k)(6)-1(a)(3).  Although an affirmative statement characterizing the investigation as criminal in nature is not permitted, "Batsch and his team made no such affirmative statements."  (Doc. 127 at 13.)  Although it may be a "fine line," it is one this Court previously approved.  (Doc. 127 at 13 (citing *Comyns*, 155 F. Supp. 2d at 1351-52).)

Similarly, agents may disclose the taxpayer's identity when, for example, contacting a taxpayer's customers.  Treas. Reg. § 301.6103(k)(6)-1(c)(1) (example 1); Treas. Reg. § 301.6103(k)(6)-1(d) (example 3).  This is because "a third-party witness typically will fear that he or she is a target of the investigation and, as a result, be less

than candid or exercise his or her right to refuse to answer questions" if

the agent does not disclose the taxpayer who is under investigation.

*Snider*, 468 F.3d at 514 (Gruender, J., concurring in part and dissenting

in part); *accord Rhodes*, 903 F. Supp. at 824, 826.  "[N]o investigation

could ever proceed without disclosure of such minimal, 'nonsensitive'

facts."  *Fostvedt v. IRS*, 824 F. Supp. 978, 983 (D. Colo. 1993) (quoting

*DiAndre*, 968 F.3d at 1053), *aff'd*, 16 F.3d 416 (10th Cir. 1994).

The other alleged disclosures related to Wasserman's

representations to investors so that the agents could assess whether

those individuals knew what they were investing in or whether they

were deceived.  (Doc. 81-4 at 8-9 ¶¶14, 17; Doc. 117-1 at 8 ¶¶11-15.)  For

example, asking investors about their knowledge of Wasserman's tax

liens[5] would help the agents determine whether the investors were

---

[5] As the United States argued below (Doc. 81 at 14-17), information that came from public sources (like tax liens, Doc. 81-4 at 6 ¶12) is not "return information."  Although this court has not addressed the issue, several circuits have held that information obtained from public sources is not protected by Section 6103.  *E.g.*, *Rowley v. United States*, 76 F.3d 796, 801 (6th Cir. 1996) ("once a taxpayer's return information becomes part of the public domain through the filing and recording of a judicial lien, it loses its confidentiality and is not protected by Section 6103 if republished by the Internal Revenue Service for tax administration purposes"); *Rice v. United States*, 166

(continued…)

fraudulently induced to invest and whether they knowingly invested at all, which was relevant to determining whether the payments were properly reported. (Doc. 117-1 at 7-8 ¶13.) The agents believed that they would not have been able to make those determinations without providing some factual context for their questions. (*Id.* at 8 ¶15.) As the District Court recognized, disclosure of this information was "relevant to the fraudulent scheme that involved potential tax issues and violations," thereby falling within the safe harbor. (Doc. 127 at 12.)[6]

---

F.3d 1088, 1091 (10th Cir. 1999) (disclosure of information obtained from "public documents and proceedings" could not violate Section 6103).

[6] Although some of the information was arguably FastLife's "return information" (*see* p. 12 n.2, *supra*), FastLife was a separate taxpayer. (Doc. 78-1 at 2 ¶5 ("FastLife" was a fictitious business name used by Wasserman's company, Phillip Roy Financial Consultants).) Wasserman cannot prevail in a suit seeking damages for the disclosure of another taxpayer's return information as Section 7431(a) only authorizes claims by "such taxpayer" whose information was disclosed. *See Morgan v. United States*, 953 F.2d 1391, 1992 WL 14934, at *1 (10th Cir. 1992) (unpub.) (information disclosed regarding two organizations sharing plaintiff's address "was not 'return information' within the meaning of § 6103 because the information was not collected with respect to plaintiff's personal return"); *Ruiz Rivera v. IRS*, 226 F. Supp. 2d 345, 349 (D.P.R. 2002) (president and founder could not sue on behalf of corporation because "the phrase 'such taxpayer' indicates that only the taxpayer whose 'return' or 'return information' has been

(continued…)

-32-

Thus, there was no material dispute of fact that the disclosures were authorized by Section 6103(k)(6)'s safe harbor.  Summary judgment was appropriate on that basis alone.

## C.    In any event, the disclosures resulted from a good-faith interpretation of I.R.C. § 6103 and its corresponding regulations

The District Court also granted summary judgment to the United States on the basis that the disclosures were made in good faith.  (Doc. 127 at 10-14.)  That alternate holding was well supported and this Court may affirm on that basis alone.

Under Section 7431(b)(1), the United States is not liable for damages for disclosures if they were made in good faith.  The exception applies where the agents (1) "followed the relevant agency regulations and/or manuals," and (2) that guidance "constituted a reasonable interpretation of the law." *Taylor*, 624 F. App'x at 695 (emphasis omitted).  "This good faith exception to Section 7431(a) is judged by an

_____

allegedly disclosed has standing to sue"), *aff'd,* 93 F. App'x 244 (1st Cir. 2004); *United States v. Zak*, 481 F. Supp. 3d 1305, 1311 (N.D. Ga. 2020) (individual did "not have standing to litigate the disclosure of a third party's tax return information"); *Norman E. Duquette, Inc. v. Commissioner*, 110 F. Supp. 2d 16, 23 (D.D.C. 2000) ("Only a taxpayer whose tax return or return information is claimed to have been improperly disclosed may bring a lawsuit under Section 7431.").

-33-

objective standard, the question being whether agents' conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Comyns*, 155 F. Supp. 2d at 1350 (citation omitted).  In making this determination, "courts have placed particular emphasis upon whether the agents in question followed the procedures and rules that are found in the IRS's Special Agents Handbook." *Id.*; *see also Gandy v. United States*, 234 F.3d 281, 286 (5th Cir. 2000) (suggesting that the relevant inquiry is whether a "reasonable agent could interpret the IRS regulations and manuals to authorize a statement").

Agent Batsch and his team believed that they were abiding by all appropriate statutes, regulations, and Internal Revenue Manual provisions when they determined return information disclosures were necessary to obtain answers not available from any other source.  (Doc. 81-4 at 3-5 ¶¶3, 9–10.)  Agent Batsch followed IRM protocols when identifying himself to witnesses and disclosing the existence of the criminal investigation to facilitate their cooperation.  (*Id.* at 4-5 ¶¶9-10; *see also* p. 6, *supra*.)

-34-

The statute explicitly authorizes the Secretary to issue regulations prescribing the "situations" and "conditions" under which such disclosures may be made.  I.R.C. § 6103(k)(6).  Those regulations repeatedly condone disclosures similar to the ones that occurred here.  Treas. Reg. §§ 301.6103(k)(6)-1(a)(1)(iv) (authorizing disclosures to establish or verify possible misconduct "or other activity proscribed by the internal revenue laws or related statues"), (c)(1) (example 1) (authorizing disclosure of taxpayer's identity and fact of investigation to obtain purchase information from customer), (c)(3) (agents do not need to seek information from a taxpayer prior to contacting a third party).

Most notably, the regulations also provide a highly analogous example contemplating that an IRS-CI agent may contact a taxpayer's customers to discuss amounts paid to the taxpayer.  They explain that an agent conducting an investigation of a doctor could obtain information from the doctor's patients "to verify amounts paid to" the doctor, even after obtaining records from the doctor and the doctor's bank.  Treas. Reg. § 301.6103(k)(6)-1(d) (example 3).  In that scenario, the statute permitted the agent to send letters to the patients disclosing "that he was a special agent with IRS-CI and that he was conducting a

-35-

criminal investigation of" the doctor.  *Id.*  "The decision whether to verify information already obtained is a matter of investigative judgment and is not limited by section 6103(k)(6)."  *Id.*

A reasonable IRS agent, when reviewing such examples, would infer that if written disclosure of the taxpayer's identity as the target of a criminal investigation is permissible when sending letters to a taxpayer's customers or patients, then oral disclosures of the same information during a one-on-one interview with a potential witness is likewise permissible.  Similarly, given that numerous courts have indicated that information like tax liens obtained from public sources is not protected by Section 6103, *e.g.*, *Rowley*, 76 F.3d at 801, a reasonable agent would similarly conclude disclosing that information to a third party determine whether there were violations of related statutes is proper.  Indeed, the IRM explicitly indicates that agents are authorized to investigate numerous related offenses, like mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and money laundering (18 U.S.C §§ 1956-1957).  *See* IRM 9.1.3-2, 2018 WL 7775336; IRM 9.1.2.2(3), 2018 WL 7775093.

The District Court agreed that regulations provided "reasonable readings of the statute." (Doc. 127 at 12.) Even before some of these regulations were issued,[7] courts had already explained that such guidance authorizes agents "to display their credentials and badges identifying them as Criminal Investigation Division agents when interviewing a third party." *Gandy*, 234 F.3d at 286-87; *accord Comyns*, 155 F. Supp. 2d at 1351-52. Similarly, that guidance supports "an agent's conclusion that he can orally inform a potential witness that he is conducting a criminal investigation." *Gandy*, 234 F.3d at 286.

Thus, under a reasonable interpretation of Section 6103, oral disclosures of the taxpayer's identity and the nature of the IRS investigation were authorized to reassure the witnesses that they were not subjects of the investigation so that they would speak candidly. Information relating to Wasserman's representations was also directly

---

[7] The revised regulations that became effective in 2006 made a number of relevant changes, including, *inter alia*, making "clear that internal revenue and TIGTA employees may identify themselves, their organizational affiliation, and the nature of their investigation, when making any oral, written, or electronic contact with a third party witness." *Disclosure of Return Information by Certain Officers and Employees for Investigative Purposes*, 71 Fed. Reg. 38985, 38985 (July 11, 2006). Consequently, decisions to the contrary that were decided before those regulations were issued are inapposite.

relevant to the charges being investigated, and the witnesses were the only credible sources of that information. (Doc. 81-4 at 4 ¶8.) "Thus, to the extent 'return information' was disclosed in the course of investigating non-tax matters, the IRS criminal investigators had at least a good faith basis to believe doing so was permissible." (Doc. 127 at 14.)

### D.    Wasserman's arguments to the contrary are unavailing

#### 1.    The District Court was entitled to rely on Agent Batsch's declarations in granting summary judgment

Wasserman repeatedly suggests that the District Court erred by relying on Agent Batsch's declarations because they are "self-serving" or "conclusory." (Br. 17, 19-20, 42, 51, 70.) These contentions are meritless.

A party moving for summary judgment may rely on "affidavits or declarations" to assert "that a fact cannot be or is genuinely disputed." Fed. R. Civ. P. 56(c)(1)(A). The only requirements for affidavits and declarations are that they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the

affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"Nothing in Rule 56 prohibits an otherwise admissible affidavit from being self-serving." *United States v. Stein*, 881 F.3d 853, 856 (11th Cir. 2018) (en banc). That rule applies to parties opposing and moving for summary judgment alike. *Cf. id.*; *Holiday Hosp. Franchising, LLC v. Oakbrook Realty & Invs., LLC*, 817 F. App'x 694, 700 (11th Cir. 2020); *Andrews v. Marshall*, 845 F. App'x 849, 859 n.8 (11th Cir. 2021). Indeed, it "would be surpris[ing] if any party ever submitted an affidavit that was not self-serving." *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1578 n.9 (11th Cir. 1991). Agent Batsch's declarations were based on personal knowledge and set out facts that would be admissible at trial and to which he would be competent to testify at trial. (Doc. 81-4; Doc. 92-2; Doc. 117-1.) All requirements were satisfied.

Wasserman also suggests that Agent Batsch's statements were "conclusionary" or that "no facts" supported them. (Br. 51.) But Agent Batsch explained his training and experience; cited provisions in the IRM supporting his statements; explained the background of the

investigation and the context for his statements; and were based on his first-hand knowledge.  (*E.g.*, Doc. 81-4 at 1-2, 4-5, ¶¶1-4, 9-10.)  These "are non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety."  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).  They are the opposite of conclusory.

Thus, the District Court properly relied on Agent Batsch's declarations in granting summary judgment.

### 2.  Wasserman cannot blame the United States for his own failure to conduct adequate discovery

In addition to attacking the United States's summary-judgment evidence, Wasserman suggests that he did not have an adequate opportunity to contest it.  He asserts that it was "impossible" for him "to know during the time that discovery was open whether the United States would file a motion for Summary Judgment and, if so, the argument that would be made and evidence presented."  (Br. 52.)  But Wasserman had every opportunity to conduct discovery and develop support for his claims to the extent that it existed.  To the extent that evidence did not exist or that he failed to take advantage of those opportunities, it does not undermine the District Court's judgment.

Wasserman was (and continues to be, Br. 1) represented by counsel and is a former attorney himself.  (Doc. 127 at 2 n.1.)  He had every means of discovery available to him to determine the United States's positions.  Among other things, he deposed Agent Batsch and Investigator Howland (Doc. 81-1 at 1-2, ¶¶2-3; Doc. 78-2 at 8 ¶7-8), issued requests for admission (*see* Br. 60; Doc. 78-2 at 2 ¶3), and propounded interrogatories (Doc. 78-2 at 7 ¶5).  Wasserman also had interview transcripts from the investigation and submitted them to the court in support of his cross-motion for summary judgment.  (Doc. 78-2 at 14-16 ¶¶9-11; Doc. 92-2 at 3 ¶¶4-6.)

And he had plenty of time to conduct discovery.  The stay was lifted in January 2024 (Doc. 30), and discovery did not close until December 2024 (Doc. 69), giving him nearly a year to develop his case. Indeed, the parties agreed to push back the dispositive-motion deadline so that Wasserman could conduct the depositions of Agent Batsch and Investigator Howland.  (Doc. 68.)

Wasserman suggests that he could have subpoenaed the interviewees had the case gone to trial and that those witnesses might have contradicted Agent Batsch.  (Br. 42, 52.)  But he also could have

done that and deposed those witnesses during discovery. *See* Fed. R. Civ. P. 30(a)(1); Fed. R. Civ. P. 45. Moreover, it should have been readily predictable to two attorneys that a defendant in a federal civil lawsuit seeking money damages would move for summary judgment.

To the extent that Wasserman failed to marshal his evidence and present it to the District Court, he has no one to blame but himself.

### 3.    The United States satisfied its burden of proof

Wasserman repeatedly claims that the United States failed to satisfy its burden of proof and/or that the District Court's decision was inadequate because it failed to address "each" alleged disclosure. (*E.g.*, Br. 17, 19-21, 42-43, 70.) The United States satisfied any burden of proof it bore, and no authority required the District Court or the United States to address each alleged disclosure one-by-one.

Here, the United States satisfied any burden of proof that it bore.[8] It produced several declarations and discovery in support of its motion.

---

[8] The Sixth Circuit has held that "good faith" is not an affirmative defense but rather that a plaintiff asserting a cause of action under Section 7431 "must plead bad faith on the part of the defendants." *Davidson v. Brady*, 732 F.2d 552, 553 (6th Cir. 1984); *accord Fostvedt*, 824 F. Supp. at 984; *but see McDonald v. United States*, 102 F.3d 1009, 1010 (9th Cir. 1996) (disagreeing with *Davidson*). Moreover, because

(continued…)

-42-

(*See* Doc. 81-2; Doc. 81-3; Doc. 81-4; Doc. 92-1; Doc. 92-2; Doc. 117-1.)

Below, as he does on appeal, Wasserman attempted to dismiss this

evidence as "self-serving" or "conclusionary."  (Doc. 94 at 10.)  But as

discussed above, Agent Batsch's declarations were not conclusory and

purportedly "self-serving" declarations can be a basis for summary

judgment.  Moreover, there is nothing wrong with a court grouping

together similar claims for analysis.  *E.g.*, *Stojetz v. Ishee*, 892 F.3d 175,

190 (6th Cir. 2018).  Wasserman repeating the contrary assertion that

the court was required to address each alleged disclosure (without

citation) does not make it so.

Regardless, the burden of proof "is of practical consequence only in

the rare event of an evidentiary tie." *Geiger v. Commissioner*, 279 F.

App'x 834, 835 (11th Cir. 2008) (citing *Blodgett v. Commissioner*, 394

F.3d 1030, 1039 (8th Cir. 2005)).  Here, the District Court correctly

concluded that the IRS established that the investigative and/or good-

---

the "except" language in Section 6103(a) is in the "enacting clause," it is part of the "affirmative definition of the offense" rather than a defense. *See United States v. Eng.*, 139 F.2d 885, 886 (5th Cir. 1944). Consequently, Section 6103(k)(6)'s safe harbor is not an affirmative defense either.  In any event, this Court need not address these issues as any burden was satisfied for the reasons discussed above.

-43-

faith exceptions applied as a matter of law.  *E.g.*, *Lowe v. Aldridge*, 958 F.2d 1565, 1569-72 (11th Cir. 1992) (defendants were entitled to summary judgment on qualified-immunity defense).  Wasserman's arguments to the contrary are baseless.

### 4. Wasserman's reliance on non-precedential authority misses the mark

One of the few authorities that Wasserman does cite and discuss in any detail (Br. 49) is the Eighth Circuit's decision in *Snider*, 468 F.3d 500.  That decision is an outlier that has been read to have little effect beyond the Eighth Circuit itself.  *See, e.g.*, *Pflum v. United States*, No. 99-4170, 2007 WL 1651290, at *9 (D. Kan. June 6, 2007) (finding that any resemblance of the taxpayer's claims to the claim at issue in *Snider* is "of little note because of the Eighth Circuit's cursory analysis of the safe harbor provision, the good faith defense, and the current body of case law interpreting and applying both.").  And, regardless, that case was decided before amendments to the Treasury Regulations that would have guided the agents' conduct here went into effect.  (*See* p. 36 n.7, *supra*.)  Thus, *Snider* is inapposite and unhelpful.

-44-

## CONCLUSION

The judgment of the District Court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

/s/ *Douglas C. Rennie*

JENNIFER M. RUBIN                    (202) 307-0524
DOUGLAS C. RENNIE                    (202) 305-7546
  *Attorneys, Tax Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Douglas.C.Rennie@usdoj.gov*

MAY 13, 2026

-45-

## CERTIFICATE OF COMPLIANCE

### With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Check the appropriate box in section 1, and check the box in section 2.

**1.  Type-Volume**

[X]    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,296 words.

**or**

[ ]    This brief complies with the line limit of Fed. R. App. P. ____ because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

**2.  Typeface and Type-Style**

[X]    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)    *Douglas C. Rennie*

Attorney for   the United States

Dated:        May 13, 2026